UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

STEPHEN P. KOTECKI,

        Petitioner,

      v.                                                      Case No. 11-C-264

JEFFREY PUGH, Warden,
Stanley Correctional Institution,

        Respondent.

---

**DECISION AND ORDER ON HABEAS CORPUS PETITION**

---

**I. PROCEDURAL BACKGROUND**

On March 15, 2011, the petitioner, Stephen P. Kotecki ("Kotecki"), filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Initially, Kotecki's petition was randomly assigned to United States District Judge J.P. Stadtmueller. On May 16, 2011, Judge Stadtmueller issued a screening order under Rule 4 of the Rules Governing Section 2254 Cases in the United States District Courts. Thereafter, on June 10, 2011, the case was reassigned to this court based on the parties' consent to magistrate judge jurisdiction. On that same date this court issued a scheduling order governing the processing of the petition. However, on July 8, 2011, prior to the date on which the respondent was to file his answer, the respondent filed a motion to dismiss the petition based on failure to exhaust. In response, the petitioner advised that he was abandoning his fourth (the unexhausted) claim.

Thereafter, on September 2, 2011, the respondent filed a motion to dismiss any claims that challenged a certain judgment of conviction that resulted in no custody for the petitioner. In response to that motion, on October 31, 2011, the petitioner advised the court that he would not be pursuing

challenges to that particular judgment of conviction; more precisely, that he would only be pursuing claims one and three as set forth in his habeas petition. Those claims are: (1) insufficiency of the evidence to support a conviction and (2) ineffectiveness of counsel stemming from trial counsel's failure to request a specific unanimity instruction.

On that same date, October 31, 2011, the petitioner filed an amended brief in support of his petition. The respondent thereafter filed his answer as well as his brief in opposition to the claims in the petition. Finally, on April 2, 2012, the petitioner filed his reply brief.

The claims set forth in Kotecki's petition are now fully briefed and are ready for resolution. For the reasons that follow, Kotecki's petition will be denied.

## II. FACTUAL BACKGROUND

The essential procedural and factual background giving rise to the petitioner's claims is set forth in the decisions of the trial court in denying Kotecki's postconviction motion and of the Wisconsin Court of Appeals in affirming the decision of the trial court. First of all, the trial court described the background as follows:

> The genus of the criminal charges against Kotecki was a harassment injunction against him on July 23, 2003 at the request of Linda Kotecki, his ex-wife. Among other prohibitions, this injunction barred Kotecki's physical presence upon the property of Linda's residence except for curbside pick-up of the parties' minor children. This injunction was amended on August 13, 2004, but the curbside pickup provision remained intact.
>
> Thereafter, the State filed four criminal cases against Kotecki. The first action was case no. 04CF3252 in which the State charged Kotecki with stalking pursuant to Wis. Stat. 940.30(2)(a). As a condition of Kotecki's release in this matter, he was ordered to have no contact with Linda.
>
> The second action was case no. 04CM9777 in which the State alleged that Kotecki had violated the harassment injunction on December 20, 2003 by intruding onto Linda's property and knocking on a window of her residence to get the attention of his son,

2

Patrick (the "window event"). As a condition of Kotecki's release in this matter, he was ordered to have no contact with Linda and his two sons, Patrick and Stephen, and to not commit any crime.

This same "window event" spawned the third action, case no. 05CF0356. In this action, the State charged Kotecki with bail jumping, alleging that his presence on Linda's property during the "window event" violated the terms of his release in the stalking case, which barred him from having any contact with Linda. As conditions of release in this matter, Kotecki was barred from having any contact with not only Linda, but also Stephen and Patrick Kotecki, his sons and that he not commit any crime.

Finally, in the fourth action, case no. 05CF2538, the State filed a further bail jumping charge against Kotecki. In this action, the State alleged that Kotecki had violated the terms of his release in the "window event" case barring contact with Patrick by attending a track meet at which Patrick was present (the "track meet event").

Kotecki pled not guilty in all four cases (the stalking case, the violation of harassment injunction case, and the two bail jumping cases), and all cases were consolidated for jury trial. As noted, the jury found Kotecki not guilty of the stalking charge, but guilty of the other three charges.

(Milwaukee Cnty. Cir. Ct. Dec. 1–2, ECF No. 28-3.)

Similarly, the court of appeals' decision described the background in the following fashion:

Mr. Kotecki was married to Linda Kotecki for twenty-five years. After the divorce, Ms. Kotecki got an injunction prohibiting Mr. Kotecki from harassing her or their children. The injunction prevented Mr. Kotecki from coming onto Ms. Kotecki's property, but did allow him to park at the curb when picking up the minor children.

Before the charges were filed in this case, the State had charged Mr. Kotecki with felony stalking, see § 940.32(2)(a), and he was released on bail. The bail conditions prohibited Mr. Kotecki from having any contact with Ms. Kotecki or their children, and from committing any new crimes. The State charged Mr. Kotecki with violating the harassment injunction based on the State's contention that in December of 2003, Mr. Kotecki went to Ms. Kotecki's residence, and knocked on the window to get their son Patrick's attention. The State also charged Mr. Kotecki with felony bail jumping based on the window incident, because his presence on Ms. Kotecki's property violated the bail conditions in the stalking case.

In April of 2005, Mr. Kotecki attended a track meet where Patrick and his school team were participating. Mr. Kotecki talked to Patrick's coaches, and passed out treats to all the teammates, but did not directly interact with Patrick. Based on this track-meet

3

incident, the State charged Mr. Kotecki with a second felony bail-jumping charge.

All four charges were consolidated and tried to a jury in September of 2005. The jury started its deliberations on a Friday afternoon. At about 9:00 p.m. Friday night, the jury sent two notes to the trial court; only one is pertinent to an issue raised on appeal. That note asked what would happen if the jury agreed on one or two charges, but could not agree on the others. The trial court brought the jurors into the courtroom and told them they would be sent home, and that they would resume their deliberations on Monday morning. At that point, one juror asked to speak privately to the trial court and said that she did not want to come back on Monday because of family problems:

> This whole week is just such an emotional toll on me. I've been having some personal issues and things at home that I'm dealing with, and my son is down in Kentucky. I wanted to go see about him because they're talking about sending him over to New Orleans, and just feel like I can't take no more of it. Just going home crying everyday, and it's just really taking an emotional toll on me.

The trial court consulted with the lawyers, and when the trial court asked Kotecki's lawyer "Do you want them to stay?" he said "To be honest, Judge, if they've come to some conclusion on some of the charges, I prefer to take what they've done so far" and later said "I'd like to take what they did with the twelve" and "I think it might be wise to have them put on paper what they've already accomplished." Accordingly, the trial court asked the jury to deliberate for another hour to try to resolve the counts on which it had agreed. After the jury resumed its deliberations, the trial court consulted with the lawyers as to how to handle the juror who did not want to return on Monday. The State told the trial court that it "would just rather have her ordered back," and Kotecki's lawyer did not disagree, saying "I guess so." The trial court decided to order the juror to return, saying "All right, that's what I'll do." The jury returned a verdict on one count, finding Kotecki guilty of bail jumping based on what happened at the track meet. The trial court dismissed the jury and told it to return on Monday.

All twelve jurors returned on Monday and Kotecki was found not guilty of stalking, but guilty of violating the injunction and guilty of bail jumping based on the window incident.

(Wis. Ct. App. Dec. ¶¶ 2-7, ECF No. 28-6.)

### III. STANDARD OF REVIEW

Federal courts may issue a writ of habeas corpus if a petitioner demonstrates that he is "in [State] custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a);

4

*Moffat v. Gilmore*, 113 F.3d 698, 702 (7th Cir. 1997). Title 28 U.S.C. § 2254 states, in pertinent part, the following:

> (b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that (A) the applicant has exhausted the remedies available in the courts of the State; or (B)(i) there is an absence of available State corrective process; or (ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

The habeas corpus statute was amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub. L. No. 104-132, 100 Stat. 1214, which provides, in pertinent part, that the federal courts may not grant habeas relief unless the state court's judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). "A rule is 'clearly established' only if it is compelled by existing Supreme Court precedent." *Henry v. Page*, 223 F.3d 477, 480 (7th Cir. 2000) (citing *Hogan v. Hanks*, 97 F.3d 189, 192 (7th Cir. 1996)).

A decision is "contrary to" established federal law as determined by the Supreme Court if "the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law," or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite" to that reached by the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 405 (2000). However, in a habeas case, "[a] state court's decision is not 'contrary to . . . clearly established Federal law' simply because the court did not cite [the Supreme Court's] opinions." *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003). A state court need not even be aware of Supreme Court precedent "so long as neither the reasoning nor the result of the state-court decision contradicts them." *Id*.

5

A state court decision results in an "unreasonable application" of clearly established federal law when that court either: (1) "identifies the correct governing legal rule from [Supreme Court precedent] but unreasonably applies it to the facts of the particular state prisoner's case," or (2) "unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407; *see also Harris v. Cotton*, 365 F.3d 552, 555 (7th Cir. 2004). However, a federal habeas court may not grant relief under the "unreasonable application" prong unless the state court's application of Supreme Court precedent "l[ies] well outside the boundaries of permissible differences of opinion." *Hardaway v. Young*, 302 F.3d 757, 762 (7th Cir. 2002) (citing *Williams*, 529 U.S. at 411). Issues of fact found by a state court are presumed to be correct unless the petitioner rebuts this presumption with clear and convincing evidence. *See* 28 U.S.C. § 2254(e)(1); *Williams v. Parke*, 133 F.3d 971, 973 (7th Cir. 1997).

## IV. DISCUSSION

As previously stated, Kotecki advances two claims in this federal habeas corpus proceeding. First, he asserts:

> There was insufficient evidence to sustain either conviction of bail jumping. Specifically, Mr. Kotecki's federal and state due process rights were violated as the jury was never presented any evidence that a prohibition on committing a criminal offense was one of Mr. Kotecki's bail conditions. There was nothing in the record to establish that Mr. Kotecki knew the terms and conditions of his bail. The court of appeals cited to a notation in a no contact order that was never presented to the jury. Because no evidence was presented to the jury about the terms and conditions of Mr. Kotecki's bail, there was insufficient evidence to support the convictions and his due process rights were violated.

(Pet. 5, ECF No. 1.)

His second claim (which is actually listed as the third claim in his habeas corpus petition) is as

6

follows:

> Trial counsel was ineffective for failing to request a specific unanimity jury instruction. The jury was presented with numerous ways that Mr. Kotecki could have committed bail jumping in both 05CF356 & 05CF2538. Trial Counsel did not request a specific unanimity instruction. This failure violated both Mr. Kotecki's due process rights and his 6th Amendment right to effective assistance of counsel.

(Pet. 8, ECF No. 1.)

*1. Insufficiency of the Evidence on Bail Jumping Convictions*

The Due Process Clause of the Fourteenth Amendment "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). Once an accused has been convicted and reviewing courts uphold that conviction, a federal court engaged in collateral review of the state conviction must make the following determination:

> whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Jackson v. Virginia*, 443 U.S. 307, 319 (1979). Under this standard, the responsibility for resolving conflicts in the testimony, for weighing the evidence and for drawing reasonable inferences from basic facts to ultimate facts, is that of the trier of fact. *Ford v. Ahitow*, 104 F.3d 926, 937-38 (7th Cir. 1997). "Therefore, the role of an appellate court is quite limited; it cannot reweigh the evidence or substitute its judgment for that of the factfinder." *Id.* at (citing *United States v. Ross*, 77 F.3d 1525, 1542 (7th Cir. 1996)).

On collateral review, the court is required to accept "the authority of the factfinder to make conclusions from the evidence." *Ford,* 104 F.3d at 938 (quoting *Schlup v. Delo*, 513 U.S. 298, 333 (1995) (O'Connor, J., concurring)). "[T]he assessment of the credibility of witnesses is generally beyond the

7

scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). The *Jackson* court's "use of the word 'could' focuses the inquiry on the power of the trier of the fact to reach its conclusion." *Id.* The *Schulp* court "characterized the essence of *Jackson*: Under *Jackson* the mere existence of sufficient evidence to convict would be determinative of petitioner's claim." *Id.*

In its decision, in which it considered and rejected Kotecki's insufficiency of the evidence argument, the Wisconsin Court of Appeals did not cite to *Jackson*; instead, it cited to *State v. Poellinger*, 153 Wis. 2d 493, 507, 451 N.W.2d 752, 757-58 (1990). But *Poellinger* pronounces a state law standard that is the functional equivalent to *Jackson*:

> [I]n reviewing the sufficiency of the evidence to support a conviction, an appellate court may not substitute its judgment for that of the trier of fact unless the evidence, viewed most favorably to the state and the conviction, is so lacking in probative value and force that no trier of fact, acting reasonably, could have found guilt beyond a reasonable doubt. If any possibility exists that the trier of fact could have drawn the appropriate inferences from the evidence adduced at trial to find the requisite guilt, an appellate court may not overturn a verdict even if it believes that the trier of fact should not have found guilt based on the evidence before it.

*Poellinger*, 153 Wis. 2d at 507 (internal citation omitted). Indeed, the court in *Poellinger* also cited *Jackson* in the body of its decision. *See* 153 Wis. 2d at 506. Such being the case, the state court identified the correct governing legal rule. Thus, the only issue that this federal habeas court must resolve is whether the state court unreasonably applied that rule to the facts of Kotecki's case.

The heart of the petitioner's argument is set forth in his brief as follows:

> The prosecution's case was largely one of alleging violation of no-contact orders, standard bail conditions, and injunctions, but the state neglected to introduce three of the four no-contact orders into evidence, and no evidence (no documents nor testimony) was introduced regarding any standard bail conditions. By the time the state rested its case, no evidence was introduced regarding what Mr. Kotecki knew about his bail conditions. Additionally, various witnesses who testified about these matters claimed many things were prohibited, some of which were false, with no clarification or correction from either attorney.

8

> Regarding the window incident, Stephen Kotecki (the son) testified that the injunction order prevented Mr. Kotecki from coming up to the house. The prosecutor and the judge told the jury another bail condition was that Mr. Kotecki commit no crimes and have no contact with the residence. The court also told the jury that violating an injunction was a crime.
>
> No trial witnesses read from any list of standard bail/bond conditions, and no standard bail/bond documents were ever offered into evidence. Moreover, the court received and allowed the jury to review the no-contact orders that were not mentioned, referenced, read from, or even offered into evidence. The no-contact orders that were referenced during testimony were not referenced by case-number. Additionally, the prosecutor later withdrew all the exhibits. It should be noted the defense made a motion for a directed verdict at the end of the state's case-in-chief.

(Pet'r's Br. 2-3, ECF No. 21) (internal citations omitted.)

The court of appeals found that there was sufficient evidence in the record with respect to the window incident to support the verdict. It noted that, contrary to Kotecki's argument, the jury did have before it the no-contact order, which ordered Kotecki "as a condition of [his] release [in the stalking case]" to have "ABSOLUTELY NO CONTACT with . . . [Ms.] KOTECKI," at any location and that "Any violation of this Court Order is a crime." (Wis. Ct. App. Dec. ¶ 12.) It further agreed with the trial court's statement that

> [b]ail jumping is self-evidently a crime under Wisconsin law. *See* Wis. Stat. § 946.49. This statutory requirement to not commit a crime as a condition [of] release is not a factual matter for proof by the State in a bail jumping prosecution. Nor is it a factual matter for a jury to decide. Rather, it is an obligation imposed by operation of law.

(Wis. Ct. App. Dec. ¶ 12., ECF No. 28-6). It concluded by stating that section 969.03(2) makes a condition of every felony bond that the person released not commit any crime while out on bond. It is not a matter of factual proof at trial.

> There was sufficient evidence before the jury that Kotecki committed the crime of violating the harassment injunction. Thus, there was sufficient evidence that he violated the condition of bond imposed by § 969.03(2).

9

(Wis. Ct. App. Dec. ¶ 12, ECF No. 28-6.)

Once again, it is important to recall the limited scope of review that this court is to apply in this habeas corpus proceeding. Federal courts may not grant habeas relief unless the state court's judgment:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). And that exacting standard has not been satisfied by Kotecki.

There was surely evidence that Kotecki banged on the window of Ms. Kotecki's house. To be sure, Kotecki testified that he only threw a snow ball at the window and his son, Patrick, did not testify that he actually saw his father bang on the window. But Patrick did testify, *inter alia*, that there was repeated rapping at the window and that he did not believe that the sound was caused by a snowball being throw at the window. Patrick also testified that shortly after hearing the sound he looked out the window and saw Kotecki in his car at curbside; that he went outside and learned that Kotecki wanted him to help move an appliance. There was also evidence that later investigation by the police revealed footprints in the snow in front of the residence (although they were not directly linked to Kotecki). Finally, Patrick testified to the details of the no contact order and stated his belief that Kotecki had driven onto the neighbor's driveway, banged on the window, and then returned to his car. (*See* Milwaukee Cnty. Cir. Ct. Dec. 4, ECF No. 28-3.) In the end, whether defendant Stephen Kotecki was to be believed was up to the jury. And the jury obviously chose to not believe defendant Kotecki's side of the story of the window incident.

Morever, to the extent that Kotecki argues that the jury had insufficient evidence of the conditions

10

of Kotecki's release on the stalking charge, such argument must be rejected. In its decision on Kotecki's postconviction motion, the trial court found that, despite what the clerk's exhibit list may have indicated, the trial record demonstrated that (1) the no contact order in the harassment injunction case, (2) the no contact order issued in the "track meet event" bail jumping case, and (3) the no contact order in the "window event" case were, in fact, all received into evidence. (Milwaukee Cnty. Cir. Ct. Dec. 6, ECF No. 28-3.) And all three of these documents included the language:

> Any violation of this Court Order is a crime, and can result in immediate arrest. YOU, the defendant, could also be charged with the crime of Bail Jumping in violation of § 946.49. This Order stays in effect as long as this case continues, unless the Court changes this Order. YOU MUST NOT DISREGARD THIS ORDER.

(No Contact Orders at 39, 44, 47, ECF No. 28-4.)

Simply stated, the petitioner has not demonstrated by clear and convincing evidence (as he must, pursuant to 28 U.S.C. § 2254(e)(1)) that the trial court's finding, as affirmed by the court of appeals, was an unreasonable determination of the facts. And because he has not done so, it follows that his habeas corpus petition, to the extent it is predicated on the claim that there was insufficient evidence to convict him of bail jumping stemming from the window incident, must be denied.[1]

*2. Ineffective Assistance of Counsel for Failing to Request Specific Unanimity Instruction*

The petitioner argues that his trial counsel was ineffective for failing to request a unanimity instruction on each of the bail jumping charges, i.e., the snow ball incident and the track meet incident. Specifically, Kotecki argues as follows:

> A unanimity instruction was required for the bail jumping charge released [sic] to

---

[1] Although the petitioner does not seem to challenge the sufficiency of the evidence on the "track meet" incident (at least with respect to the facts supporting such charge), to the extent that he challenges his conviction on that charge due to the No Contact Order not being admitted into evidence, such claim is rejected for the same reason that such claim is being rejected on the "window event" conviction.

11

> the snow ball incident. Stephen Kotecki (the son) testified that the no-contact order prevented Mr. Kotecki from coming up to the house. The prosecutor and the judge told the jury another bail condition was that Mr. Kotecki not commit crimes, and violating an injunction is a crime.
>
> Some jurors in this situation could conclude Mr. Kotecki committed the crime of violating the injunction, some could conclude throwing a snowball constituted the crime of disorderly conduct, some could decide hitting the house with a snowball is contact with the house, and some could believe Mr. Kotecki knocked on the window.
>
> Mr. Kotecki was charged with one count of bail jumping. There was evidence presented of more than one act which alone would or could constitute bail jumping. Also, Mr. Kotecki had potential defenses to some of the various ways to commit the bail jumping. Therefore, the situation required a specific unanimity instruction, and the failure to demand it constituted ineffective assistance.
>
> Because a violation of one bail term may be charged separately from a violation of a second bail term, a specific unanimity instruction was necessary to have confidence Mr. Kotecki's conviction resulted from 12 jurors agreeing on what Mr. Kotecki did to violate the injunction. Trial counsel was ineffective for failing to request the specific unanimity instruction. Based on the court of appeals' analysis of the bail jumping charged in 05CF356, all of these arguments apply to the need for a unanimity instruction on that charge as well.

(Pet'r's Br. 12-13, ECF No. 21.)

Defendants in criminal cases have a constitutional right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984). In order to establish an ineffective assistance of counsel claim, a defendant must demonstrate both that counsel's assistance was ineffective, and that the ineffective assistance prejudiced the defendant. A defendant must demonstrate that "counsel's representation fell below an objective standard of reasonableness," and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 688, 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

The burden on a habeas petitioner to show that counsel's assistance was ineffective is not easily

12

satisfied. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689 (quoting *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)).

Furthermore, a habeas court need not address the two prongs of *Strickland* in any particular order or even address both if the defendant makes an inadequate showing as to one. In this latter regard the Supreme Court in *Strickland* stated:

> [T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one. In particular, a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

466 U.S. at 697.

In deciding Kotecki's ineffective assistance claims the Wisconsin Court of Appeals applied the two pronged test of *Strickland*. That is to say, the court of appeals identified the correct governing legal rule from the Supreme Court. Thus, the only question for this court to decide is whether the state court unreasonably applied *Strickland* to the facts in Kotecki's case.

In assessing whether Kotecki's counsel was ineffective on this particular issue, the court of appeals found that Kotecki was not entitled to a unanimity instruction. Thus, his counsel could not have been ineffective for failing to ask that one be given. The court stated:

> We apply the following test to determine whether a unanimity instruction is constitutionally required to "ensure[] that each juror is convinced beyond a reasonable doubt that the prosecution has proved each essential element of the offense," *State v.*

13

> *Lomagro*, 113 Wis. 2d 582, 591, 335 N.W.2d 583, 589 (1983):
>
>> The first step is to determine whether the jury has been presented with evidence of multiple crimes or evidence of alternate means of committing the *actus reus* element of one crime. If more than one crime is presented to the jury, unanimity is required as to each. If there is only one crime, jury unanimity on the particular alternative means of committing the crime is required only if the acts are conceptually distinct. Unanimity is not required if the acts are conceptually similar.
>
> *Id.*, 113 Wis. 2d at 592, 335 N.W.2d at 589 (italics in original; internal citation omitted).
>
> Unanimity instructions were not, as alleged by Kotecki on appeal, required here. Thus, his trial lawyer was not ineffective for not asking for them. The window incident involved one alleged act–that Kotecki came onto the property in violation of the injunction and knocked on the window. The track-meet incident involved a continuous course of conduct, and "Wisconsin has historically held that in 'continuing course of conduct' crimes, the requirement of jury unanimity is satisfied even where the jury is not required to be unanimous about which specific underlying act or acts constitute the crime." *State v. Johnson*, 2001 WI 52, ¶ 17, 243 Wis. 2d 356, 376, 627 N.W.2d 455, 461. Thus, the only thing the jury needed to agree on was that Kotecki showed up at Patrick's track meet and was visible to Patrick and was "near" him; they did not need to all agree as to which specific thing Kotecki did at the meet violated the no-contact order.

(Wis. Ct. App. Dec. ¶¶ 24-25, ECF No. 28-6.)

This court cannot say that the court of appeals misapplied Wisconsin law in its ruling on the unanimity instruction issue. Even more importantly, this court cannot find that the court of appeals' decision to reject Kotecki's unanimity instruction claim was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States. Indeed, no where in his legal briefs does the petitioner present any discussion of, or even citation to, any United States Supreme Court decision which he claims the Wisconsin courts' decision on the unanimity issue in his case is contrary to or an unreasonable application thereof. And recall that a federal habeas court can only grant relief to a habeas petitioner if the petitioner demonstrates that the state court's judgment:

14

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). Such being the case, it logically follows that, to the extent that Kotecki's federal habeas corpus petition is predicated on the claim that his trial lawyer was constitutionally ineffective for failing to ask for a unanimity instruction, his petition must be denied.

## V. CERTIFICATE OF APPEALABILTY

There is one final matter to address. Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides, in pertinent part, as follows:

a) Certificate of Appealability. The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue. If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2). If the court denies a certificate, the parties may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Under 28 U.S.C. § 2253(c), a district court may issue a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The court of appeals has held that this standard differs only in scope from the certificate of probable cause standard that was previously developed and applied by the courts. *See Herrera v. United States*, 96 F.3d 1010, 1012 (7th Cir. 1996). The *Herrera* court said that "a certificate of probable cause places the *case* before the court of appeals, but a certificate of appealability must identify each *issue* meeting the 'substantial showing' standard." *Id*. (emphasis added). Thus, for the court to issue a certificate of appealability to Kotecki, it must identify for the court of appeals the issues that are "debatable among

15

jurists of reason; that a court *could* resolve the issues [in a different manner]; or that the questions are 'adequate to deserve encouragement to proceed further.'" *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983) (quoting *Gordon v. Willis*, 516 F. Supp. 911, 913 (N.D. Ga. 1980)). This test was reiterated in *Miller-El v. Cockrell*, 537 U.S. 322 (2003), *rev'd on other grounds, Miller-El v. Dretke*, 545 U.S. 231 (2005).

> Consistent with our prior precedent and the text of the habeas corpus statute, we reiterate that a prisoner seeking a COA need only demonstrate "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further.

*Id.* at 327 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).

In my opinion, and for the reasons set forth in this decision denying Kotecki's habeas corpus petition, none of Kotecki's claims warrants a certificate of appealability. Put simply, the petitioner has not demonstrated "a substantial showing of the denial of a constitutional right" by demonstrating either that jurists of reason could disagree with this court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further. Consequently, the court will deny Kotecki a certificate of appealability. Of course, Kotecki retains the right to seek a certificate of appealability from the court of appeals. *See* Fed. R. App. P. 22(b).

**NOW THEREFORE IT IS ORDERED** that Kotecki's petition for a writ of habeas corpus be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**;

**IT IS FURTHER ORDERED** that a certificate of appealability be and hereby is **DENIED**;

**IT IS FURTHER ORDERED** that the clerk of court enter judgment accordingly.

16

**SO ORDERED** this 22nd day of May 2012, at Milwaukee, Wisconsin.

                                  **BY THE COURT**:

                                  s/ William E. Callahan, Jr.
                                  WILLIAM E. CALLAHAN, JR.
                                  United States Magistrate Judge